UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **BILLY JOE AYERS, individually and on behalf of his minor child, A.E.A.** | : | **DOCKET NO. 2:18-cv-00289** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **PACKAGING CORPORATION OF AMERICA, ET AL** | : | **MAGISTRATE JUDGE KAY** |

# REPORT AND RECOMMENDATION

Before the court are a Motion to Remand [doc. 8] and Motion to Amend [doc. 11] filed by plaintiff Billy Joe Ayers. The motion was filed in response to a Notice of Removal [doc. 2] filed by defendant Packaging Corporation of America ("PCA"). Defendant opposes the motion to remand [doc. 10] and the motion to amend. Doc. 14.

These motions were referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion to Remand and Motion to Amend [docs. 8, 11] be **DENIED**, and that all claims against Elite Industrial Services, Inc., and Elite Specialty Welding, LLC, be **DISMISSED WITHOUT PREJUDICE**.

I.
BACKGROUND

On February 1, 2018, Ayers, a Texas resident, filed suit in the 36th Judicial District Court, Beauregard Parish, Louisiana. Doc. 1, att. 7, p. 2. He named as defendants PCA, a corporation with its citizenship in Illinois and Delaware; Elite Industrial Services, Inc., "believed to be a Texas corporation," and Elite Specialty Welding, LLC ("Elite," collectively with Elite Industrial

Services), "a Delaware limited liability company, with its principal place of business in the State of Louisiana." *Id.*[1]

According to the petition, Ayers was employed as a boilermaker by Elite, which had been contracted by PCA to perform maintenance work, including cutting and welding, at PCA's paper mill in DeRidder, Louisiana. *Id.* at pp. 2–3. On the day of the incident, Ayers was on site at the mill in DeRidder while an Elite welder was doing "hot work" above a foul condensate tank ("FC tank") that had not been fully purged of flammable gases. *Id.* at pp. 3–4. The gases formed a vapor cloud that exploded as a result of the welding work, resulting in severe injuries to Ayers and killing or injuring several of his coworkers. *Id.* at p. 4. Ayers asserts that PCA and Elite are liable because they were negligent and knew or should have known that the accident was substantially certain to occur. *Id.* at pp. 6–7.

On March 7, 2018, PCA removed the action to this court, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. Doc. 2, p. 2. PCA maintains that Elite was improperly joined to defeat diversity because Louisiana law bars suits by an employee against his employer for work-related injuries. *Id.* at pp. 3–4.

Ayers filed the instant motion to remand on April 4, 2018. Doc. 8. He argues that the "intentional act exception" to the Louisiana workers' compensation statute applies in this case and thus he has a reasonable basis for recovery in tort under the Fifth Circuit's "substantially certain test" because Elite "'consciously subject[ed him] to a hazardous or defective work environment.'" Doc. 8, att. 1, p. 8 (quoting *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1327 (5th Cir. 1996)). PCA opposes remand. Doc. 10. Ayers has also filed a Motion to Amend [doc. 11], seeking to add claims against James Machine Works, LLC ("JMW"), manufacturer of the FC tank, and PCA

---

[1] PCA asserts that "Elite Industrial is the name under which Elite Specialty operates, and is not a separate entity." Doc. 2, p. 3. Ayers does not contest this statement. Doc. 8, p. 2 n.1.

employees Raymond Lester, Floyd LeBleu, and Timothy Wohlers. Doc. 11. PCA opposes the motion. Doc. 14.

## II.
### LAW & ANALYSIS

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of 28 U.S.C. § 1332(a)(1) require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

**A. Improper Joinder**

If removal is based on a claim that an in-state defendant has been improperly joined, the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Only the latter method is relevant here, because no fraud is alleged. Thus the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The movant is therefore required to put forth evidence "that would negate a possibility of liability on the part of [the nondiverse defendant]." *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 767 (5th Cir. 2016) (quoting *Travis*, 326 F.3d at 650)

(alterations in original). All contested issues of substantive fact and ambiguities in the controlling state law must be resolved in the plaintiff's favor. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

In order to assess the plaintiff's possibility of recovery against the non-diverse defendant, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 574. This inquiry "depends upon and is tied to the factual fit between the [plaintiff's] allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 574.

Ayers asserts that Elite knew or was substantially certain that flammable gases had built up in the FC tank and an explosion was likely to result if any hot work was done nearby. Doc. 8, att. 1, p. 5. Louisiana law generally forbids an employee from suing his employer for work-related injuries. La. R.S. § 23:1032(A)(1)(a). However, the intentional act exception permits an employee to file suit when his injury was the result of an intentional act by the employer. *Id.* at § 23:1032(B). The Louisiana Supreme Court has cautioned that the intentional act exception is to be narrowly construed. *Reeves v. Structural Pres. Sys.*, 731 So.2d 208, 211 (La. 1999). Under Louisiana jurisprudence, intent may be found if the employer "knows that the consequences are certain, or substantially certain, to result from his act." *White v. Monsanto*, 585 So.2d 1205, 1208 (La. 1991). Accordingly, the Fifth Circuit has held that "the substantially certain test is satisfied when an employer *consciously* subjects an employee to a hazardous or defective work environment where injury to the employee is *nearly inevitable*." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1327

(5th Cir. 1996) (emphasis in original) (citing *Kent v. Jomac Prods., Inc.*, 542 So.2d 99, 100 (La. Ct. App. 1st Cir. 1989)).

PCA argues that plaintiff's allegations are unsupported by factual assertions and that he simply recited the language of the Louisiana workers' compensation statute. Doc. 10, p. 5. In support, PCA relies in particular on *Bonner v. Georgia-Pacific, LLC*. There the plaintiffs alleged that the defendants intentionally withheld the results of a test for lead-based paint which resulted in their exposure to harmful dust and fumes. 2013 WL 2470466, at *1, 3 (M.D. La. June 7, 2013). The court dismissed the claims under Rule 12(b)(6), ruling that the plaintiffs could not invoke the intentional act exception because they "fail[ed] to plead any factual basis to support this conclusory allegation and fail[ed] to identify by whom they received such information and upon what grounds it was reliable." *Id.* at *4. Further, the court held that "a plaintiff cannot merely include the word 'intentional' or the phrase 'substantially certain' in a complaint to avoid application of the exclusive remedy provision." *Id.*

As PCA points out, Ayers has not alleged any facts showing that Elite knew flammable gases had built up in the FC tank; knew an explosion was substantially certain if hot work was done nearby; was aware of any prior similar incident; had knowledge of the technical details of the mill's operations such that it should have known of the potential danger; or, if it was aware of any of those facts, how it acquired such knowledge and on what grounds those facts were reliable. Doc. 10, p. 12. In his reply memorandum, Ayers merely repeats the assertions he made in his original petition and memorandum in support of remand: Elite was in charge of his work, failed to ensure that the FC tank had been purged of flammable gases, and knew or should have known that an explosion was likely to occur if hot work was done nearby. Doc. 13, pp. 2–3.

Based on the foregoing, Ayers has not pleaded sufficient facts to state a plausible claim that the accident was the result of an intentional act by Elite. Thus, joinder was improper and all claims against Elite should be dismissed.

### B. Motion to Amend

On March 27, 2018, Ayers filed a motion to amend his complaint, "seeking to add Louisiana citizens as defendants … which further destroys diversity via the [forum] defendant rule." Doc. 11, att. 1, pp. 8–9 (citing 28 U.S.C. § 1447(e); *Cobb v. Delta Exps., Inc.*, 186 F.3d 675, 677 (5th Cir. 1999)). As the respondent points out, however, the plaintiffs in this matter are Texas citizens and so the addition of Louisiana defendants would not impact this court's diversity. Instead, it could only create a potential issue by adding "forum defendants" – that is, defendants whose residents are from the forum state – to the action. Specifically, Ayers seeks to add individual defendants Floyd LeBleu, Raymond Lester, and Timothy Wohlers, as well as James Machine Works, LLC ("JMW").[2]

Under the "forum defendant rule," a case that is otherwise removable on the basis of diversity must be remanded if any defendant who was properly joined *and served* at the time of removal is a citizen of the state where the original action was brought. 28 U.S.C. § 1441(b)(2) (emphasis added). A violation of the forum defendant rule creates a procedural defect in removal but does not alter the court's subject matter jurisdiction. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 393–96 (5th Cir. 2009). As PCA notes and we have stated, "[m]ultiple district courts within the circuit have held that the presence of a forum defendant will not create a defect if that defendant

---

[2] PCA contests the citizenship allegations of JMW because Ayers only alleged that it was "a Louisiana liability company with its principal place of business located in the Parish of Ouachita, State of Louisiana" and did not allege the citizenship of its members under *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). We assume for the sake of argument that Ayers has properly identified JMW as a Louisiana citizen, and grant it leave to amend if this is not the case.

was not properly served at the time of removal." *William v. Boyd Racing LLC*, 2016 WL 236993, at *3 (W.D. La. Jan. 19, 2016) (collecting cases); *see also* 14B Wright & Miller, Fed. Prac. & Proc. § 3723 (4th ed.) (noting that the language of the forum defendant rule "implies that a diverse but resident defendant who has not been served may be ignored in determining removability"). Accordingly, the proposed amendment need not be analyzed as one impacting subject matter jurisdiction under *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), and there is no reason to believe that allowing the Louisiana defendants in at this stage would require remand of the action. Still, PCA protests the amendment on the grounds of futility.

Leave to amend is within the trial court's discretion but should be freely granted "when justice so requires." FED. R. CIV. P. 15(a)(2). However, this guidance by no means renders leave to amend automatic. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006). Leave to amend should not be granted if amendment would be wholly futile because the plaintiff failed to state a plausible claim against the proposed defendants. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) (citation omitted) (holding that an amendment is futile if it fails to satisfy the standard under FED.R.CIV.P. 12(b)(6)). In this diversity case, the court applies state law to evaluate the sufficiency of the plaintiff's claims. *Henry v. O'Charleys, Inc.*, 861 F.Supp.2d 767, 771 (W.D. La. 2012).

1. **Futility analysis – individual defendants**

Ayers asserts that LeBleu, Lester, and Wohlers are personally liable because they were employed by PCA in various managerial positions at the mill and through their own personal fault or negligence caused the explosion. Doc. 11, att. 2, pp. 8–14.

Under Louisiana tort law, an employee is personally liable to a third person if the employee breached a personal duty owed to that person. *Freeman v. Wal-Mart Stores, Inc.*, 775 F.Supp. 208,

210 (W.D. La. 1991). Courts look to the factors set forth by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), to determine if there is a basis for an employee's personal liability. *Id.* Under *Canter*, four factors must be satisfied before personal liability can be imposed:

> (1) The employer must owe a duty of care to the third person, the breach of which caused the damages for which recovery is sought.
> (2) The duty was delegated by the employer to the particular employee.
> (3) The employee breached the duty through his own personal fault.
> (4) Personal liability cannot be imposed simply because of general administrative responsibilities; instead it must result from a personal duty to the plaintiff that was not properly delegated to another employee.

*Canter*, 283 So.2d at 721 (*superseded by statute on other grounds as stated in Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1265 (La. 1999)).

PCA opposes granting leave to amend because the proposed amended petition fails to state a plausible claim under *Canter* against LeBleu, Lester, and Wohlers. Doc. 14, p. 11. It contends that plaintiff's allegations are conclusory and based solely on the proposed defendants' general administrative duties or job titles. *Id.* at pp. 13–14 (citing doc. 11, att. 2, ¶¶ 33, 37, 41–42). It also incorporates by reference the showings made in related cases. *See* doc. 14, p. 18 n. 56 and accompanying text.

Ayers alleges that Wohlers had a duty to oversee the operations of the FC tank. Doc. 11, att. 2, ¶¶ 33, 37. He asserts that LeBleu had a duty to ensure the safety of all contractors working at the mill, [*id.* at ¶ 34], and Lester had a duty to oversee the area of the mill where the explosion occurred. *Id.* at ¶ 35. Ayers also contends that each of the proposed defendants knew that the FC tank contained dangerous levels of NCGs, was aware that it should have been purged prior to

allowing hot work nearby, refused to order that it be emptied, failed to take any other precautions to ensure the welders' safety, and did not warn them of the hazardous condition.

Ayers maintains that his factual assertions are supported by the court's decision in *Thomas v. Wal-Mart La., LLC*, 2011 WL 3418322, at *1 (W.D. La. Aug. 3, 2011). Doc. 15, p. 5. In *Thomas*, the court found that an assistant store manager had a personal duty toward the plaintiffs because, although she submitted a declaration generally denying the plaintiffs' allegations, she admitted knowing of a hazardous condition and took no steps to correct it. *Thomas*, 2011 WL 3418322, at *2–3. The plaintiffs made "an uncontroverted claim of knowledge and failure to warn or correct," which was one of the manager's assigned duties, and thus the court found that they stated a plausible claim under *Canter* and ordered that the case be remanded. *Id.* at *3.

PCA argues that none of the proposed defendants knew that hot work was scheduled to take place near the FC tank on the day of the explosion and, therefore, could not have done anything to prevent the explosion. Doc. 14, p. 18. Also, PCA states that Wohlers and Lester were not at the mill when the incident occurred and thus could not have issued the hot work permit. *Id.* In support, PCA points to declarations made by the proposed defendants that it submitted in two other cases that arose out of the same accident. *Id.* (citing *Delarosa v. Packaging Corp. of Am.*, no. 2:18-cv-00186, doc. 14, att. 1; *Gooch v. Packaging Corp. of Am.*, no 2:18-cv-00278, doc. 13, att. 2 and doc. 13, att. 3).

In his declaration, Wohlers denies that he had been delegated any duty over the FC tank, [*Delarosa*, no. 2:18-cv-00186, doc. 14, att. 1, ¶¶ 5, 6], knew that hot work was to take place nearby, [*id.* at ¶ 7], or issued any permit authorizing hot work. *Id.* Lester similarly denies having been delegated any duty over the FC tank, [*Gooch*, no. 2:18-cv-00278, doc. 13, att. 1, ¶¶ 3, 5, 6], knowing that any hot work was scheduled nearby, [*id.* at ¶¶ 12–14], or issuing any hot-work

permit, *Id.* at ¶¶ 6, 7, 10. Likewise, in his declaration LeBleu states that he had never been delegated any duty concerning the FC tank, [*Gooch*, no. 2:18-cv-00278, doc. 14, att. 2, ¶¶ 5–7], was unaware of any hot work schedule in the area around it, [*id.* at ¶¶ 6, 11, 12], and did not issue any hot work permit. *Id.* at ¶¶ 6, 8. He also avers that he was only responsible for the safety of contractors who worked on capital projects and, because the maintenance outage was not a capital project, he had no duty for the welders' safety. *Id.* at ¶¶ 3, 6.

Comparing the allegations in Ayers's proposed amended petition with the declarations of the proposed defendants, we find that he failed to establish a plausible claim against them. Ayers has provided no evidence contradicting their sworn statements that they were never delegated a duty over the FC tank, were unaware that any hot work was scheduled on or near it, and did not issue a permit authorizing the welders to do hot work. *See Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312–313 (5th Cir. 2005). This case is distinguishable from the *Thomas*, *supra*, because here the defendants have testified that they were entirely unaware that any hazardous condition existed. Because plaintiff has not brought forth evidence to rebut the declarations of the proposed defendants, his motion to amend should be denied as to the claims raised against the individuals.

2. **Futility analysis – JMW**

PCA also asserts that the proposed claims against JMW are futile because, in relevant part,[3] they are perempted under Louisiana law. Under Louisiana law, peremption refers to

> a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. Unlike the doctrine of prescription . . . peremption may not be renounced, interrupted, or suspended.

---

[3] PCA also alleges that the allegations do not provide enough factual detail to withstand a motion to dismiss. Doc. 14, p. 21.

*Wilson*, 602 F.3d at 369 (citing La. C.C. art. 3461) (cleaned up). Under Louisiana Revised Statute § 9:2772, as it existed at the time the FC tank was installed,[4] a seven-year peremptive period applies to actions "against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovable, or improvements to immovable property."

Plaintiffs maintain that PCA lacks standing to raise this issue and cannot raise the matter because it was not asserted as an affirmative defense, as required under Louisiana law. Doc. 18, p. 7. Louisiana Revised Statute § 9:2772(E), on which plaintiffs rely, provides only that the peremptive period "shall not be asserted **by way of defense** by a person in possession or control . . . of such an improvement at the time" the claim arises. This statute does not exclude a codefendant's ability to assert peremption as a means of showing improper joinder, in order to defeat the plaintiffs' alleged attempts at forum manipulation.

Plaintiffs assert that § 9:2772 does not apply to JMW because the statute "was intended to cover construction type activities and land surveying" and "does not apply to the manufacturers of moveable property." Doc. 15, p. 3. As the Fifth Circuit recently emphasized, neither § 9:2772 nor the Louisiana Civil Code defines what is an "improvement" to immovable property. *Wilson*, 602 F.3d at 370–71. A component part of immovable property, on the other hand, has long been defined under Article 466 of the Louisiana Civil Code to include things attached to a building to such a degree "that they cannot be removed without substantial damage to themselves" or the building to which they are attached. Under Louisiana law, component parts of immovable property are treated

---

[4] In *Wilson v. Martco Ltd. Partnership*, 2008 WL 11393109, *3 (W.D. La. Jul. 17, 2008), this court determined that it was appropriate to apply the version of the statute that existed when the allegedly defective improvement was installed instead of the version that existed when the accident occurred. Plaintiff does not challenge PCA's representation that the version of the statute amended in 2000 is the appropriate one to apply in this case, based on PCA's predecessor taking possession of the tank in January 2001. Doc. 22, pp. 1–2.

as immovables themselves. *See, e.g.*, *Willis-Knighton Med. Ctr. v. Caddo Shreveport Sales and Use Tax Comm'n*, 903 So.2d 1071, 1078 (La. 2005). As the Fifth Circuit noted:

> Nothing in the plain language of 9:2772 requires that the item itself be an immovable, either in and of itself or by virtue of being a component part of an immovable; rather, the plain language of the statute requires only that the item be an "improvement to immovable property." If the Louisiana Legislature had intended for the statute to apply so narrowly, *i.e.,* only to immovables and their component parts, the Legislature easily could have used the phrase "component parts of immovables" rather than "improvements to immovable property." Importantly, it did not. It is significant, then, that although the Louisiana Civil Code and its ancillary statutes make numerous references to "component parts," 9:2772 includes no such reference.

*Wilson*, 602 F.3d at 370–71. It went on to hold, under a definition of "improvement" drawn from various sources, that the relevant question in determining whether an addition to immovable property was an improvement was merely whether it was "permanently attached" to the immovable. *Id.* at 371–73. Accordingly, it concluded that the ten-ton wood chipper at issue in that case, which had been hardwired into a factory building's electrical system and bolted to that building with steel beams, was an improvement to immovable property and that the maker of that machine was therefore entitled to § 9:2772's limitations period. *Id.*

Here the Kummerfeldt declaration and attachments show – and plaintiff does not refute – that the FC tank was permanently installed in the mill, satisfying the Fifth Circuit's definition for an improvement to immovable property. Accordingly, we need not explore whether the FC tank had also become a component part of the mill based on the evidence provided. Plaintiff's claims against JMW are thus perempted under state law. PCA has thus shown that the peremptive period applies to JMW and bars plaintiff's proposed claims, making them futile. The motion for leave to amend should therefore be denied.

## III.
### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand and Motion to Amend [docs. 8, 11] be **DENIED** and that all claims against Elite Industrial Services, Inc., and Elite Specialty Welding, LLC, be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 30th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE