UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BILLY JOE AYERS** | **CASE NO. 2:18-CV-00289** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PACKAGING CORP OF AMERICA INC.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 37] filed by defendant Packaging Corporation of America, Inc. ("PCA"). PCA seeks dismissal of all claims in this matter on the grounds that it is the statutory employer of the plaintiff and that his claims are therefore preempted under Louisiana law. Plaintiff Billy Joe Ayers opposes the motion in a consolidated brief filed with plaintiffs in other suits relating to the same explosion. *In re PCA Discovery*, No. 2:20-mc-0028, doc. 6 (W.D. La.). The court stayed consideration of the matter pending a decision from the United States Court of Appeals for the Fifth Circuit, *Brandon Morris v. Graphic Packaging International, LLC*, No. 19-30940 (5th Cir. 2020). A ruling was issued in that matter on October 12, 2020, and this case is now ripe for decision.

**I.**
**BACKGROUND**

This litigation arises from an explosion at a paper mill owned by PCA in Deridder, Louisiana. Doc. 1, att. 7. PCA asserts that it acquired the mill in October 2013 through the stock purchase of Boise, Inc. and its subsidiaries. Doc. 37, att. 1, p. 2. At this point it assumed control over the mill's operations. *Id.* However, Boise Packaging and Newsprint,

LLC remained designated operator and title owner of the mill until July 2017, when the merger was completed. *Id.*

Plaintiffs allege that a foul condensate tank exploded while employees of Elite Specialty Welding ("Elite"), including Ayers, were repairing a leak in the mill's clean condensate line on February 8, 2017. Doc. 1, att. 7; *see* doc. 37, att. 3, pp. 2–3. The explosion resulted in deaths and injuries, leading to several individual lawsuits against PCA. Ayers filed one such suit in the 36th Judicial District Court, Beauregard Parish, Louisiana. Doc. 1, att. 7. The suit was removed to this court on the basis of diversity jurisdiction.

PCA now seeks summary judgment on all claims in the suits brought by or on behalf of the Elite employees. It alleges that it was the statutory employer of the Elite welders by virtue of their contract with Boise and purchase orders relating to the work underway at the time of the explosion. Doc. 37, att. 1. Accordingly, it maintains, all tort claims against it are preempted under Louisiana workers' compensation law. Ayers and the other plaintiffs oppose the motion, arguing that the documents at issue were insufficient to confer statutory employer status.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact.

Case 2:18-cv-00289-JDC-KK   Document 50   Filed 10/27/20   Page 3 of 11 PageID #: 391

*Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

#### A. *Statutory Employer Requirements*

Under the Louisiana Workers' Compensation Act ("LWCA"), an employer is liable for compensation benefits to an employee who is injured because of an accident arising out of the course and scope of his employment. La. Rev. Stat. § 23:1031(A). In return, the

-3-

employee is limited to recovery of workers' compensation as his exclusive remedy for such accidents. *Id.* These provisions extend not only to direct employers but also to "statutory employers." *Id.* at § 23:1032.

"Simply put, a statutory employer/employee relationship can arise when, in conformance with La. Rev. Stat. § 23:1061, a principal hires a contractor to perform services that are part of the principal's business; in this situation, the principal can become the statutory employer of the contractor's employees." *Nielsen v. Graphic Packaging Int'l, Inc.*, 469 F. App'x 305, 307 (5th Cir. 2012). Relevant to this matter, statutory employer status is conferred under § 23:1061(A)(3) when the principal enters into a written contract recognizing it as the statutory employer of the contractor's employees. *See Wright*, 807 F.3d at 732–33. This creates a rebuttable presumption that the principal is statutory employer, and the employee may overcome it only by showing that the work is not integral or essential to the principal's business. La. Rev. Stat. § 23:1061(A)(3). Where there is no such written agreement in effect at the time of the accident, however, the principal cannot claim immunity as a statutory employer. *Boucher v. Graphic Packaging Int'l*, 281 F. App'x 306 (5th Cir. 2008). "In its current form, § 1061(A)(3) is interpreted liberally by courts across Louisiana and their federal counterparts." *Whitehead v. Int'l Paper Co.*, 2018 WL 6186944, at *2 (W.D. La. Nov. 27, 2018) (citing *Wright v. Excel Paralubes*, 807 F.3d 730 (5th Cir. 2015); *Prejean v. Maintenance Enterprises, Inc.*, 8 So.3d 766 (La. App. 4 Cir. 2009)).

### B. Application

There are three documents in this matter purporting to confer statutory employer status: (1) an "Annual Contractor Services Agreement" from 2014, signed by Elite and Boise Packaging and Newsprint, LLC, and (2) purchase orders Nos. 215857 and 217370, dating from November 2016 and January 2017. Ayers maintains that none of these satisfies the written contract requirements of Louisiana Revised Statute § 23:1061.

#### 1. Annual Contractor Services Agreement

The "Annual Contractor Services Agreement" ("ACSA") is a contract signed on August 18, 2014, that describes various terms of the relationship between Elite and Boise. Doc. 37, att. 4, pp. 4–46. Section 17.0 of the ACSA provides that the following shall apply for Louisiana work:

> The Louisiana Legislature passed legislation on June 5, 1997, Act 315, which requires contracts to recite in writing the "statutory employer" status of the parties hereto. The Governor signed the legislation on June 17, 1997, and it became effective on that date (the "Act"). Boise (as principal employer under the Act) and [Elite] (as direct employer) mutually agree that it is their intention to recognize Boise as the statutory employer of [Elite's] employees under the Act while [Elite's] employees are providing work and/or services to Boise under this agreement. The parties agree that Boise is a statutory employer only for purposes of the above-referenced Act.

*Id.* at 24–25. Despite the use of "annual" in the agreement's title, there is no express term. Instead, the ACSA provides that it will continue until terminated in accordance with Section 15.0 – that is, for cause or convenience of either party under the terms of the ACSA. *Id.* at 7, 23–24. Finally, the ACSA states that no modification or amendment thereto is valid unless agreed to by the parties in writing and signed by their authorized representatives. *Id.* at 27.

PCA did not argue for this document as one of the sources of statutory employer status in its original motion. In response to arguments raised in the plaintiffs' consolidated opposition, however, it maintains that the agreement is still effective and protected PCA as a result of the merger. Accordingly, the issue is not properly before the court. Even if it were, however, there is insufficient evidence to support the document's ability to confer statutory employer status to PCA.

Recent Louisiana circuit court decisions suggest a "broader application of principal to include the intent of the parties" in statutory employer provisions, under which a post-merger entity may claim statutory employer status though only the pre-merger entity executed the agreement. *See Johnson v. Motiva Enters. LLC*, 128 So.3d 483, 489–90 (La. Ct. App. 5th Cir. 2013) (collecting cases); *see also Wright v. Excel Paralubes*, 807 F.3d 730, 734–36 (5th Cir. 2015) (finding statutory employer status accorded to one member of joint venture based on provisions of Master Service Agreement, to which another member was signatory). Such a finding, however, is not supported by the evidence presented on the parties' intent in this matter. Unlike the agreement in *Johnson*, the ACSA speaks only of Boise and not of any successor or affiliate.[1] There is no evidence of any post-merger modification. Accordingly, PCA has not shown a right to summary judgment based on statutory employer status as conferred through the ACSA.

---

[1] *Wright*, in which the Fifth Circuit made an *Erie* guess based on *Johnson*, is also distinguishable. As this court recently noted, that matter involved the "specialized partnership" created through a joint venture, which was in place at the time the agreement was executed and which allowed one entity to bind the other. *See Coleman v. Halcón Resources Corp.*, 2017 WL 2509151, at *8 (W.D. La. June 7, 2017). Here, on the other hand, the court deals with separate corporate entities that did not have authority to bind the other at the time the agreement was executed, and an agreement that contained no indication that "principal" should be read to include any entity other than Boise.

### *2. Purchase Orders*

The original work order for repair of the clean condensate line was submitted by PCA after a leak in that line was observed in October 2016. Doc. 37, att. 3, pp. 2–3. Elite's bid was accepted and Purchase Order No. 215857 was issued on November 10, 2016 ("the November purchase order"). *Id.* at 3, 12. It was signed by a representative of PCA and states "RATES AND TERMS AND CONDITIONS PER CURRENT CONTRACT ON FILE." *Id.* at 12. It provides:

> THE LOUISIANA LEGISLATURE PASSED LEGISLATION ON JUNE 5, 1997, ACT 315, WHICH REQUIRES CONTRACTS TO RECITE IN WRITING THE "STATUTORY EMPLOYER" STATUS OF THE PARTIES HERETO. THE GOVERNOR SIGNED THE LEGISLATION ON JUNE 17, 1997, AND IT BECAME EFFECTIVE ON THAT DATE (THE "ACT"). PCA/BOISE (AS PRINCIPAL EMPLOYER UNDER THE ACT) AND THE CONTRACTOR (AS DIRECT EMPLOYER) MUTUALLY AGREE THAT IT IS THEIR INTENTION TO RECOGNIZE PCA/BOISE AS THE STATUTORY EMPLOYER OF THE CONTRACTOR'S EMPLOYEES UNDER THE ACT WHILE CONTRACTOR'S EMPLOYEES ARE PROVIDING WORK AND/OR SERVICES TO PCA/BOISE UNDER THIS AGREEMENT. THE PARTIES AGREE THAT PCA/BOISE IS A STATUTORY EMPLOYER ONLY FOR PURPOSES OF THE ABOVE-REFERENCED ACT.

*Id.* Below this text is a signature line for Elite, as contractor. It has been left blank. *Id.* Finally, the November purchase order provides that it "is issued subject to PCA's Terms and Conditions http://www.packagingcorp.com/doing-business-with-pca." *Id.* That page contains a link for "Purchase Order Terms and Conditions," on which page Section 10 also includes the statutory employer language.

Elite began work as scheduled in November 2016. *Id.* at 2–3. Only a temporary repair was completed at that time, however, and the work was rescheduled for February

2017 to allow for a permanent repair during the mill's annual shutdown. *Id.* at 3. The February 2017 work was described in the January purchase order, No. 217370, which does not contain the statutory employer language excerpted above. *See id.* at 22. Like the November purchase order, however, the January order also provides that it "is issued subject to PCA's Terms and Conditions http://www.packagingcorp.com/doing-business-with-pca."

Plaintiffs have argued that (1) only the January purchase order should be considered in relation to that accident, because it was the work described in that purchase order that was underway on the date of the explosion; and (2) at any rate, neither the November or January purchase order could confer statutory employer status because neither was a valid contract, based on the lack of signature by Elite. In the interest of judicial economy, the court will first consider whether the January purchase order conferred statutory employer status and will only examine the November purchase order if January's order did not.

In *Morris v. Graphic Packaging International, LLC*, __ F. App'x ___, 2020 WL 6039948 (5th Cir. 2020), the Fifth Circuit recently determined that an unsigned purchase order with attached terms and conditions met the written contract requirement of Louisiana's statutory employer law. Though the opinion is unpublished and therefore not binding, the court accepts it as highly persuasive. As the panel noted:

> [T]he plain text of the Louisiana statute in question does not require a signed writing, it just requires a "written contract." La. Stat. Ann. § 23:1061(A)(3). Under Louisiana law, the offer and acceptance may be oral, and acceptance can be through performance, as it was here. LA. CIV. CODE ANN. art. 1927 ("Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.")

*Id.* at *2. Here the evidence shows that Elite began performing work pursuant to the January 2017 purchase order, leading to the explosion that caused the injuries at issue, and that it also invoiced PCA for this work after the accident, with reference to the purchase order number. *See In re PCA Discovery*, No. 2:20-mc-0028, doc. 13, att. 2, p. 4. The evidence further shows, as described above, that Elite performed work subject to the November 2016 purchase order without signing it. Accordingly, though unsigned, the January 2017 purchase order was a written contract for the purposes of Louisiana Revised Statute § 23:1061(A)(3) that was accepted through performance. Its terms are therefore binding.

The plaintiffs have argued that the January 2017 purchase order, with its reference to terms on a website, must be distinguished from that used in *Morris*, where the statutory employer language was contained in additional terms physically attached to the order. *See Morris*, 2020 WL 6039948 at *1. As defendant notes, however, the Fifth Circuit has already held that under general principles of contract law, terms and conditions referenced at an internet address on a purchase order can be validly incorporated into the contract formed by that purchase order. *See One Beacon Ins. Co. v. Crowley Marine Svcs., Inc.*, 648 F.3d 248 (5th Cir. 2011). That case dealt with an indemnity clause, which is subject to strict construction. *E.g.*, *Duval v. Northern Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013). The panel found that the term was validly incorporated and that there was no reason to distinguish the doctrine of incorporation by reference where the term was contained on a website rather than on a physical copy of some document. *One Beacon Ins. Co.*, 648 F.3d at 267–68. Instead, the chief consideration remains whether "the party to be bound had

reasonable notice of the terms at issue and whether the party manifested assent to those terms." *Id.* at 268. "Notice of an incorporated term is reasonable where, under the facts of the case, 'a reasonably prudent person should have seen' them." *Id.* (quoting *Coastal Iron Works, Inc. v. Petty Ray Geophys., Div. of Geosource, Inc.*, 783 F.2d 577, 582 (5th Cir. 1986)).

Here the purchase order contains clear language, visible and conspicuous to the naked eye, indicating that the order is "issued subject to PCA's terms and conditions" at the web address described above. The terms are readily accessible at that address and contain unambiguous statutory employer language. While there is little evidence on Elite's level of sophistication, the terms are so clearly incorporated that the court assumes any reasonably prudent party with the capacity to sign such a contract would understand it. Furthermore, as described above, acceptance was clearly manifested by performance when Elite began the work described.

The January 2017 purchase order, No. 217370, conferred statutory employer status on PCA for the work performed by the Elite employees on the date of the explosion. Plaintiffs have not argued, much less shown, that this work was not integral or essential to PCA's business. Accordingly, they have not met their burden of rebutting the presumption established under § 23:1061(A)(3). PCA is immune to the tort claims brought by and on behalf of the Elite employees and the matter must be dismissed.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 37] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on this 27th day of October, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**